(September 7, 2000)

■ In the Matter of ANDREW F. CAPOCCIA, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, Petitioner. [712 NYS2d 699] —Per Curiam. Respondent has been found guilty of professional misconduct by this Court stemming from his conduct in defending numerous consumer collection actions (272 AD2d 838). Having been heard in mitigation, we now consider the imposition of appropriate discipline.

The sustained charges accused respondent of engaging in conduct involving dishonesty, fraud, deceit or misrepresentation (see, Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]); engaging in conduct prejudicial to the administration of justice (see, DR 1-102 [a] [5] [22 NYCRR 1200.3 (a) (5)]); engaging in conduct that adversely reflects on his fitness as a lawyer (see, DR 1-102 [a] [7] [22 NYCRR 1200.3 (a) (7)]); filing a suit, asserting a position, conducting a defense, delaying a trial or taking other action on behalf of a client

when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another (*see,* DR 7-102 [a] [1] [22 NYCRR 1200.33 (a) (1)]); and knowingly advancing a claim or defense that was unwarranted under existing law and which could not be supported by a good-faith argument for an extension, modification or reversal of existing law (*see,* DR 7-102 [a] [2] [22 NYCRR 1200.33 (a) (2)]). Charge I alleged that respondent was financially sanctioned for repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients. The specifications cited eight consumer collection cases in which respondent was sanctioned in amounts up to $10,000 (*see,* 22 NYCRR part 130). Charge II alleged that respondent engaged in the conduct of repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients. The specifications cited 14 consumer collection cases in which respondent was either sanctioned, warned or placed on notice of a hearing for his assertion of defenses and counterclaims which were wholly without merit, frivolous and/or bordering on frivolous. Charge III alleged that a sanction of counsel fees and/or costs was assessed against respondent for repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients. The specifications cited five consumer collection cases in which costs and fees were assessed against respondent in amounts up to $3,009.14.

By application of the doctrine of collateral estoppel to the findings of the trial courts cited in Charges I through III of the petition (excepting one decision), we concluded that no factual issues were raised by the pleadings and that respondent was indeed guilty of the charged misconduct (*see, Matter of Capoccia,* 272 AD2d 838, *supra*). As required for application of the doctrine, our disciplinary decision determined that there was an identity of issues necessarily decided by the trial courts which was decisive in the instant disciplinary proceeding and that there was a full and fair opportunity to contest the issues before those courts. That decision directed that a time be fixed at which respondent could be heard before this Court in mitigation, thereby denying his alternative request that he be afforded an evidentiary hearing. Respondent, in fact, appeared before this Court on June 27, 2000 and his attorneys at that time presented argument in mitigation.

In the papers submitted on the issue of mitigation—which include respondent's affidavit, affidavits and letters from colleagues and clients, and copies of 154 trial court decisions which he claims favor his clients and/or the defenses and

counterclaims for which he has been warned or sanctioned[1]
—respondent repeated his request for a "full blown" eviden-
tiary hearing on the issue of mitigation "to demonstrate his
good faith belief in the merits of his advocacy." We decline to
order such a hearing (see, 22 NYCRR 806.5). With respect to
this request, respondent essentially makes two points.

First, he claims that "[w]ithout the right to a hearing, [he is]
unable to demonstrate the decisions of dozens of Judges hold-
ing in favor of [his] defenses." Because respondent has already
submitted these decisions in the record before this Court and
we have reviewed them, there is certainly no need to hold a
hearing on this point. Although a few of the submitted deci-
sions found merit to certain arguments propounded by respon-
dent on behalf of some clients, the vast majority, at best, merely
show that respondent has been successful in requiring credi-
tors to adhere to the procedural and evidentiary mandates for
summary judgment. These decisions hardly demonstrate that
respondent's defenses and counterclaims have been sustained
on the *merits*. Nor do they demonstrate good faith in the
context of respondent's high-volume practice in which he
repeatedly asserted the same defenses and counterclaims
regardless of whether a factual basis existed to support them
and his undeniable awareness that his litigation tactics had
been repeatedly denounced at the trial level.

The real crux of respondent's argument in support of a hear-
ing is his claim that he "acted in good faith with respect to the
cases cited in the * * * Petition" and that he did "not know-
ingly or intentionally engage in frivolous litigation, or in any
other way attempt to impede the administration of justice" and
would prove same at a hearing. He further avers, for example,
that "on all matters it was believed, under the factual patterns
controlling, that arguments were being proffered with a good
faith basis in their legal and factual viability." Thus, we are
compelled to point out that respondent himself equates the is-
sue of good faith with whether he engaged in frivolous conduct
in the first instance.

In requesting a hearing for this purpose, respondent is seek-
ing yet another opportunity to relitigate the findings of sanc-
tionable conduct and/or the findings of the numerous trial
courts that his claims were plainly without merit. It is quite
clear that respondent wishes to relitigate at an evidentiary

1. Specifically, respondent's attorney claims to have submitted "[c]opies of
decisions by certain lower courts in New York State in which the defenses
and counterclaims at issue in this case were *not* deemed frivolous or sanc-
tionable under Rule 130-1.1" (emphasis in original).

hearing in mitigation that which he already has had an opportunity to contest before the lower courts which sanctioned or warned him. Said differently, this is yet a third attempt on respondent's part to prove that his conduct was not frivolous or bordering on frivolous and that his defenses and counterclaims in each case had merit.

To be sure, respondent did not seriously dispute that in each of the relevant cases he was on notice that sanctions were being sought based on allegations of frivolous conduct. Furthermore, he failed to demonstrate that he did not have an opportunity to fully respond, either in writing or at a hearing, to any such application (see, 22 NYCRR 130-1.1 [d]). For example, one trial court placed respondent on notice that it was considering the imposition of sanctions and gave him additional time to submit written proof or argument relative to the issue of sanctions, as well as an opportunity for oral argument (see, Sears, Roebuck & Co. v Ruede, Albany City Court, July 8, 1998, Stein J.). Respondent, however, failed to submit any written proof or to request oral argument. Two trial courts held sanction hearings at which appearances were made by an associate from respondent's firm (rather than respondent personally) (see, Providian Natl. Bank v Whiteman, Sup Ct, Otsego County, Dec. 18, 1999, Mugglin, J.; Providian Natl. Bank v McGowan, 179 Misc 2d 988). In the latter case, respondent was also given the opportunity to submit written proof on the issue of sanctions, yet he submitted no papers to the court. In another case, the passage of almost two months elapsed between the date that the plaintiff's reply affirmation requested sanctions and the date that the original motion for summary judgment was heard and, most importantly, respondent never appealed from the ensuing decision sanctioning him (see, Citibank [S. D.] v Latino, Sup Ct, Oswego County, Feb. 5, 1999, Nicholson, J.).[2] Two decisions specifically noted that respondent was given an

---

2. In a postargument letter to this Court, respondent claims that our recent decision in Household Fin. Corp. III v Dynan (274 AD2d 656) demonstrates that collateral estoppel was improperly applied by this Court and argues that a hearing in mitigation should be held "to determine whether and to what extent [he] received an opportunity to contest the lower court sanctions rulings." However, the precise legal argument raised by respondent on appeal in Household Fin. (i.e., respondent argued that he was not given an opportunity to be heard on that particular sanction application because the request for same was made for the first time in a reply affidavit) was not raised by him in arguing against the application of collateral estoppel. More importantly, as noted in our prior decision, respondent did not appeal from many of the decisions sanctioning or warning him, including the decision in Citibank v Latino (supra) and Providian Natl. Bank v Hale (Sup Ct, Albany County, Dec. 23, 1998, Teresi, J.).

opportunity to be heard on the application on two separate dates and respondent's counsel submitted an unsworn written explanation and gave an oral statement in opposition to sanctions on these dates (*see, Trustco Bank, Natl. Assoc. v Neal*, Sup Ct, Albany County, Mar. 24, 1999, Teresi, J.; *Citibank v Jones*, Sup Ct, Albany County, Mar. 24, 1999, Teresi, J., *affd* 272 AD2d 815). Two others noted respondent's written submissions in opposition or subsequent to the request for sanctions (*see, State Empl. Fed. Credit Union v Farrell*, Sup Ct, Albany County, Feb. 22, 1999, Hughes, J.; *Providian Natl. Bank v Lamanec*, Sup Ct, Greene County, Mar. 25, 1999, Cobb, J.).

In a few decisions cited in the petition which did not actually impose sanctions, the trial courts granted summary judgment motions opposed by respondent on behalf of the defendant debtors and then strongly cautioned him that future similar frivolous submissions would be subject to 22 NYCRR part 130 consideration (*see, Providian Natl. Bank v Hale*, Sup Ct, Albany County, Dec. 23, 1998, Teresi, J.; *Providian Natl. Bank v Barber*, Sup Ct, Albany County, Dec. 11, 1998, Teresi, J.). Other trial courts ordered a sanctions hearing after granting the plaintiff creditor summary judgment on the merits (*see, First Deposit Natl. Bank v Van Allen*, Rensselaer County Ct, Apr. 2, 1999, McGrath, J.; *Providian Natl. Bank v Kolceski*, Sup Ct, Madison County, Feb. 26, 1999, O'Brien, III, J.) or gave respondent an opportunity to be heard in written form on the issue of sanctions (*see, Providian Natl. Bank v Forrester*, Sup Ct, Cortland County, Mar. 30, 1999, Rumsey, J.; *First Deposit Natl. Bank v Foland*, Albany City Court, Jan. 8, 1999, Stein, J.). In the latter case, respondent was advised that the trial court would render a determination on the merits unless he requested oral argument.

In summary, in those cases in which respondent was actually sanctioned, he had a full and fair opportunity to develop his good-faith belief in the merits of his advocacy and failed in this regard. In those cases where he was not actually sanctioned, respondent lost on the merits and was unequivocally informed that his defenses and counterclaims were without merit. He was also warned in these cases that his defenses and/or counterclaims bordered on frivolous or that reasonable cause existed to believe that they were frivolous or that a hearing and/or additional proof was required on the issue. Under these circumstances we find no need to conduct a "full blown" evidentiary hearing on his alleged good faith. Moreover, the voluminous papers submitted in mitigation and respondent's appearance by three separate attorneys at oral argument are sufficient on the issue of character.

Turning to the issue of the appropriate sanction, we note that respondent's litigation tactics, as thoroughly described in our prior decision, have deleteriously burdened this State's judicial system well beyond any reasonable or defensible effort to represent clients. He has repeatedly asserted defenses and counterclaims as a regular practice without making a good-faith inquiry into their applicability to the facts of any given case as part of an intentional strategy to delay litigation and to harass his opponents in order to extract settlements, all despite express warnings from scores of Justices and Judges throughout this State to discontinue these practices. Numerous trial courts, through their written and oral decisions and imposition of sanctions, have clearly condemned such tactics, as has this Court. This very serious misconduct is further aggravated by respondent's disciplinary record, which includes a six-month suspension (*Matter of Capoccia*, 107 AD2d 888, *lv denied* 64 NY2d 606) and a censure (*Matter of Capoccia*, 144 AD2d 231), and by his lack of expressed remorse. We further note that, during oral argument, one of respondent's attorneys acknowledged payment of only a relatively small portion of the approximately $1.4 million in sanctions which have been assessed against him by trial courts.[3]

In view of all of the above and in order to protect the public, preserve the integrity and reputation of the Bar and deter similar misconduct, we conclude that respondent should be disbarred.

Mercure, J. P., Crew III, Peters, Carpinello and Graffeo, JJ., concur. Ordered that respondent is disbarred, and his name is stricken from the roll of attorneys, effective immediately; and it is further ordered that respondent is commanded to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another, and he is forbidden to appear as attorney and counselor-at-law before any court, Judge, Justice, board, commission or other public authority, or to give to another an opinion as to the law or its application or any advice in relation thereto; and it is further ordered that respondent shall comply with the provisions of this Court's rule (22 NYCRR 806.9) regulating the conduct of disbarred attorneys.

(September 8, 2000)

---

3. We note, however, that some appeals are pending and some undertakings have been filed in various cases.